Filed 11/23/22  In re A.L. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | D080798 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. EJ4600) |
| Plaintiff and Respondent, | |
| v. | |
| R.L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Conditionally reversed and remanded with directions.

Megan Turkat-Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

R.L. (Father) appeals the juvenile court's order terminating his parental rights to his daughter, A.L., under Welfare and Institutions Code[1] section 366.26.[2] The sole issue on appeal is whether the San Diego County Health and Human Services Agency (Agency) and the juvenile court failed to conduct an adequate initial inquiry under section 224.2 into A.L.'s possible Native American ancestry, as defined by the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). The Agency concedes error but contends that the error is harmless. We accept the concession but disagree that the error is harmless. Rather, applying the standard of prejudice set forth in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*), we conclude that the record reveals the existence of readily obtainable information from extended family members likely to bear meaningfully on whether the child is an Indian child. Accordingly, we find the error prejudicial, conditionally reverse the order terminating parental rights, and remand the matter for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND[3]

In January 2021, the Agency petitioned the juvenile court under section 300, subdivision (b)(1) on behalf of A.L., because the mother used controlled

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] The court also terminated the mother's parental rights, but the mother did not appeal this order.

[3] Because Father's sole contention on appeal challenges the Agency's compliance with its section 224.2, subdivision (b) initial inquiry duties, we limit our discussion of the facts and procedural history to information necessary to determine that issue.

substances while pregnant with her. A.L. tested positive for amphetamines and opiates at birth and suffered numerous withdrawal symptoms. The Agency attached an undated ICWA-010(A) form to its petition, indicating that the Agency had no reason to believe the child was an Indian child, but the form does not identify the factual basis for this statement.

The Agency's detention report stated that the mother denied having any Native American ancestry during a January 20, 2021 interview. When asked if she had any reason to believe A.L. was an Indian child, the mother said no. At this time, Father was still an alleged father and was not interviewed, and the mother denied knowing if Father had any Indian affiliation.

At the January 26, 2021 detention hearing, the attorneys for the mother and Father denied that either parent had any known Native American ancestry. The court then found that ICWA did not apply. It appears from the record that the Agency conducted no further ICWA inquiries after this hearing. The Agency's subsequent reports simply indicate that "[o]n 01/26/2021, the Court found the Indian Child Welfare Act does not apply."

As reflected in the Agency's jurisdiction/disposition report, the Agency spoke with the paternal grandmother, a paternal nonrelative extended family member (NREFM) C.B.,[4] a maternal great aunt, and a paternal great aunt about accepting placement of A.L. The Agency also sent letters to three paternal aunts or uncles, the paternal grandfather, and the maternal

---

[4] This individual's relationship to A.L. is unclear. The Agency identifies C.B. as a NREFM. However, during the detention hearing, counsel for Father described her as "the sister," and the mother's counsel referred to her as "the paternal aunt."

grandfather[5] asking if they would be interested in placement. Though the letters are not included in the record, the report summarizes the placement-related information relayed to these individuals. There is no indication in the record on appeal that the Agency ever asked any of these relatives about A.L.'s possible Native American ancestry.

An addendum report indicates that the Agency also spoke with Crystal P., whom Father described as his sister, about possible placement. Nothing in the record suggests the question of Native American ancestry was raised during this contact.

After the paternal great aunt declined placement, C.B. ceased responding to telephone calls, and the maternal great aunt and Crystal P. were deemed ineligible for emergency placement, the Agency focused on placing A.L. out of state with the paternal grandmother. During a six-month review hearing in October 2021, the court ordered the Agency to place A.L. with the paternal grandmother. The paternal grandmother subsequently participated in two continued section 366.26 hearings and the contested 366.26 hearing, but at no point was the issue of potential Native American heritage mentioned during any of these proceedings.

The court terminated both parents' parental rights at the June 2022 contested 366.26 hearing. Father timely appealed from the order,

---

[5]     The table listing the names of the individuals the Agency identified as "potential relatives" and their relationships to A.L. appears to be riddled with errors, with seemingly male relatives listed as aunts or grandmothers and apparently female relatives listed as uncles or grandfathers. The individual subsequently identified as the maternal grandfather is listed as an unspecified "relative." The individual listed as the second paternal grandmother is identified elsewhere in the record as the paternal grandfather. Another unspecified "relative," who likely is the maternal grandmother, also received a letter, but her relationship to A.L. is not confirmed in the record.

challenging only the court's ICWA finding, made at the time of the detention hearing.[6]

## DISCUSSION

In dependency proceedings, the juvenile court and the Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).) The Agency's initial inquiry duty, which is at issue in this appeal, includes, but is not limited to, "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or

---

[6] Father did not appeal from the juvenile court's January 2021 detention order in which the court expressly found that ICWA did not apply. Ordinarily, "California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8.) However, because the duty of inquiry under ICWA is a *continuing* one, the one-shot rule does not apply here. (See § 224.2, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 6 ["Because ICWA imposes on the juvenile court a continuing duty to inquire whether the child is an Indian child, we hold that the parent may challenge a finding of ICWA's inapplicability in an appeal from the subsequent [termination of parental rights] order, even if she did not raise such challenge in an appeal from the initial [detention] order"].)

Indian custodian is domiciled." (§ 224.2, subd. (b).)[7] ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

We review ICWA findings for substantial evidence, "[b]ut where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

Here, Father asserts, and the Agency concedes, that the Agency failed to comply with its initial ICWA inquiry obligations under section 224.2 because it did not question the extended family members available to it about possible Native American ancestry. We agree.

During the dependency proceedings, the Agency failed to take advantage of many opportunities to make ICWA inquiries of readily available relatives. The Agency had telephonic contact with the paternal grandmother and at least one paternal aunt,[8] but did not ask either of these family

---

[7]    If the initial inquiry reveals a reason to believe the child is an Indian child, then further inquiry into whether there is a reason to know the child is an Indian child is required. (*D.F., supra,* 55 Cal.App.5th at pp. 566–567.) If there is reason to know that a child is an Indian child (§ 224.2, subd. (d)), then notice must be sent to the pertinent tribe to allow the tribe to make a determination regarding the child's tribal membership. (*D.F.,* at pp. 567– 568.)

[8]    Although Agency records are conflicting, it appears Crystal P. is Father's sister and C.B. may also be a sister. The Agency spoke with both women.

members whether the child "[was] or may be an Indian child" as required in an initial ICWA inquiry. (§ 224.2, subd. (b); *Benjamin M., supra,* 70 Cal.App.5th at p. 744 [failure to ask father's known relatives about possible Indian ancestry violated ICWA requirements].) A social worker also spoke with a maternal great aunt and a paternal great aunt. Although these great aunts do not fall within the definition of "extended family members," the duty of inquiry also extends to "others who have an interest in the child . . . ." (§ 224.2, subd. (b); see also *In re Dominick D.* (2022) 82 Cal.App.5th 560, 564, fn. 2, 567 [requiring initial inquiry of a maternal great-grandfather who served as the dependent's caregiver because he was included under "others who have an interest in the child"]; *In re S.R.* (2021) 64 Cal.App.5th 303, 314 (*S.R.*) ["[t]he statute obligates the court and child protective agencies to ask all relevant involved individuals . . . 'whether the child is, or may be, an Indian child' "].) Both great aunts were involved in A.L.'s dependency proceedings as potential placements, and the maternal great aunt informed the social worker in January 2021 that she was in contact with a "maternal aunt." Thus, the Agency should have asked these great aunts whether they were aware of any Indian ancestry and requested the maternal aunt's contact information. (*See In re K.R.* (2018) 20 Cal.App.5th 701, 707–708 [holding that "actions [the Agency] was required to undertake" included contacting paternal grandfather for paternal great-grandfather's contact information and contacting great-grandmother for information about paternal grandfather and paternal great-grandfather].) Finally, the record reflects that the Agency had mailing addresses for three paternal aunts or uncles, the paternal grandfather, and the maternal grandfather. Even though each of these relatives qualifies as an "extended family member," nothing in the record suggests the Agency asked any of them about possible Native

7

American heritage. In sum, because the Agency's initial ICWA inquiry was inadequate, we conclude there is insufficient evidence to support the juvenile court's finding that ICWA did not apply.

The parties dispute whether the error was harmless. The Courts of Appeal have applied varying analytical frameworks to evaluate whether ICWA initial inquiry errors are prejudicial or harmless. We need not address these various approaches because this division has adopted the approach articulated in *Benjamin M., supra,* 70 Cal.App.5th 735. (*In re Y.M.* (2022) 82 Cal.App.5th 901, 916 (*Y.M.*).)

Under this approach, "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M., supra,* 70 Cal.App.5th at p. 744.) This "standard does not require 'proof of an actual outcome (that the parent may actually have Indian heritage).' [Citation.] The missing information need only be relevant to the ICWA inquiry, 'whatever the outcome will be.' " (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 679; *id.* at p. 680 [applying *Benjamin M.* standard and finding reversible initial inquiry error where agency "asked the parents about Indian ancestry" but "failed to ask extended family members about it"].)

On this record, we cannot say the Agency's failure to comply with its initial inquiry duties was harmless. Extended family members were readily available, and their responses would likely have borne meaningful

information, regardless of the outcome of the inquiry.[9] (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Furthermore, the fact the parents denied any Indian heritage does not relieve the Agency of its "broad duty" to inquire of readily ascertainable extended family members whether the children are Indian children. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) A contrary rule would "ignore[] the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*Ibid.*; *S.R.*, *supra*, 64 Cal.App.5th at p. 314 ["the children's parents apparently had no idea of their family's connection to the . . . tribe . . . , even though the children's great-grandmother was a member"]; see also *In re T.G.* (2020) 58 Cal.App.5th 275, 295 [noting that ICWA's "expansive" duty of inquiry "is premised on the commonsense understanding that, over time, Indian families, particularly those living in major urban centers . . . , may well have lost the ability to convey accurate information regarding their tribal status"]; *In re Rylei S.*

---

[9] The Agency's mismatched and confusing records documenting the relatives contacted for possible placement also weigh against a harmless error finding. As the court said in *Benjamin M.*, "[w]hen assessing whether ICWA inquiry error was harmless, a court must know enough about the persons contacted to determine if the agency failed to inquire of persons who might have helpful information; murky documentation of the agency's efforts may support a reasonable inference that it failed to do so." (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 745–746.) Moreover, we are not persuaded by the Agency's argument that, because these individuals did not respond to the placement letters, "[i]t follows that said individuals were similarly unavailable for ICWA inquiry." Requesting that individuals disclose any known Native American ancestry imposes a significantly lower burden than asking them to take custody of an infant.

(2022) 81 Cal.App.5th 309, 321–322 [same].)[10]  Thus, we conditionally reverse the juvenile court's order terminating parental rights for a limited remand to ensure compliance with the ICWA inquiry obligations.

Given the importance of expediency and need for finality, we encourage the parties to stipulate to immediate issuance of the remittitur in this case. (Cal. Rules of Court, rule 8.272(c)(1).)

## DISPOSITION

The order issued at the June 27, 2022 contested section 366.26 hearing is conditionally reversed and the matter is remanded to the juvenile court with directions that, within 30 days of the remittitur, the Agency must file a report demonstrating its compliance with the initial inquiry provisions of

---

[10]  The Agency analogizes to *Y.M.*, *supra*, 82 Cal.App.5th 901, in suggesting that, given the paternal grandmother's ongoing involvement with the case and Father, Father could have asked her about the family's Indian ancestry.  Further, as the individual seeking placement of A.L., the Agency argues the paternal grandmother, like the paternal grandfather in *Y.M.*, "had a strong incentive to raise any Indian ancestry in support of that goal." (*Y.M.*, at pp. 917–918.)

Though these facts are superficially similar to *Y.M.*, its holding is not so broad.  It is not clear from the record before us that Father or paternal grandmother had any reason to know or appreciate the significance of Indian ancestry.  In *Y.M.*, by contrast, a social worker met with the father to discuss whether he had any Indian ancestry. (*Y.M.*, *supra*, 82 Cal.App.5th at p. 906.) Here, there is no indication the Agency ever spoke with Father about ICWA or that the importance of disclosing Indian heritage was ever explained by the Agency or the court during one of the many hearings Father and paternal grandmother attended.  The record does not include an ICWA-010(A) or ICWA-020 form from Father, and the only reference to ICWA with regard to him is his attorney's assertion that "Father indicates no Indian ancestry." Therefore, we are not persuaded that the ICWA inquiry error was harmless as to the paternal grandmother.  Moreover, a finding of harmless error as to the paternal grandmother still would not resolve the issue, as the Agency additionally failed to make ICWA inquiries of other readily available extended family members, including maternal relatives.

section 224.2, subdivision (b), and, if required, conduct further inquiry under section 224.2, subdivision (e). Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine whether the Agency's investigation satisfied its affirmative duty to investigate. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If neither the Agency nor the juvenile court has reason to believe or to know that the child is an Indian child, the order issued at the June 27, 2022 contested section 366.26 hearing shall be reinstated by the juvenile court. Alternatively, if after completing the inquiry the Agency or the juvenile court has reason to believe that the child is an Indian child, the court shall proceed accordingly.


BUCHANAN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.


11